Next case is Keith Raniere v. Microsoft and AT&T, 2017, 1400 and 1401. Mr. Crockett. Thank you. May it please the Court. Is it Raniere or Raniere? Raniere. Okay. Thank you for letting me appear before you again. And my client and I stand before you as chastened individuals. Mistakes were made. They were not exceptional mistakes. My remarks are prefaced by the fact that I fully understand the discretionary aspects of this case. I don't pretend to ignore them. I don't pretend to run from them. But this case is not exceptional and did not justify the level of attorney fee sanctions that were issued against my client. The case is not exceptional because... Don't you think it exceptional that, taking the district court at its word, that at every stage of the litigation, Mr. Raniere filed declarations misrepresenting his ownership interest in GTI? That's incorrect. He filed one declaration, and he did not misrepresent his ownership interest in GTI. The district court was incorrect. I'm holding him in contempt. Mr. Raniere. The district court said he continued to file extensions, request for extensions, for periods of discovery after it had ended and without sufficient cause. There was no reason to think additional facts would be discovered. He delayed proffering evidence of standing, et cetera. The district court was erroneous, Your Honor. There were no... The only request for extensions he ever made was when he couldn't appear for his deposition for a family emergency, but he was willing to appear and Microsoft and AT&T were interested. The district court had the facts wrong on contempt and delay. We outlined that in our opening brief. We cite to the record on every score. He only filed one declaration. The facts of the... My problem with your exceptionality argument is that you're not pointing to any legal error. You're just debating the factual conclusion. Right. So the standard you have to meet is extraordinarily high. You have to show that the district court clearly erred and clearly erred given our deferential standard of review, so I think that's a very difficult position for you to take. You are correct, and that was the first thing I said today was that I understood the burden was high and that the discretion was a burden I had to overcome. But citing from the Supreme Court's decision in Octane Fitness, I'd like to read just a little language you probably already know. Oh, don't bother. Let's go to reading quotes. We know what it says. Yeah, and we also know Octane Fitness, but in the blue brief, you say you weren't given access to documents filed under seal, but a couple of pages later, page 41, you appear to cite documents filed under seal in your arguments citing to J4083, 4232. Were you able to review the documents that Microsoft filed under seal? Where, Your Honor, do I say that we could not review documents under seal? 39. Of the opening brief, 39? Yes. Oh, I'm sorry. These were the redacted bills, correct? Right. We could not see the redactions. That's correct. But you could see the bills. We could see the bills, but we could not see the redactions. That's correct. But the redacted bills were filed under seal, were they not? Not that I'm aware of, no, Your Honor. So my question is, because this is unclear from the record, you couldn't see the redactions. Did the trial court review the redactions in camera? Not that I'm aware of, Your Honor, no. Did you request that the trial court review them in camera? I didn't request that, no, Your Honor. They were redacted, and we didn't see them. So, I mean, we didn't see the redactions. We saw the bills. But you don't know if the trial court saw them. I don't believe they did. I have no reason to believe they saw unredacted bills. We would have really complained about that. If the trial court did? No, I would have complained about the fact that the trial court would have seen something I didn't get to see. But it happens all the time if there's a privilege issue. But I would have complained about it and demanded to see it, and that didn't happen. So I'm not aware that the trial court saw unredacted bills. Okay. Can you turn to your prevailing party argument? Yes. Because, exceptionality aside, there has to be a prevailing party. Yes. The prevailing party issue is this is an odd thing, odd case, given in particularly the Supreme Court's CRST decision. That's what I'm asking about. Okay. The odd thing about the Supreme Court's CRST decision is it didn't overrule Buchanan. Buchanan required in order to be a prevailing party you had to have a decision on the merits. CRST said, obviously, in a Title VII employment case, that you didn't have to have a decision on the merits. But that case really only applied to employment issues. So you read CRST to be limited to Title VII? I would. However, I'd point out that the First Circuit in, I think it's Small Justice LLC v. Eccentric, 873 F3D 313, in 2017, cited, it was a copyright case, cited it for the proposition opposite to what I'm arguing now. And that is that Title VII, because the Supreme Court did not overrule Buchanan, and Buchanan is still cited as good law, that when it comes to a jurisdictional dismissal for lack of standing, CRST shouldn't apply. I'm sorry. When you say Buchanan is still cited as good law, it hasn't been cited as good law by the Supreme Court, has it? Well, it was cited by good law as a Supreme Court in CRST. Yes, Your Honor. Yes. In that section of your bluebrief, you say that Rule 41, 41B, is where we should look to determine that involuntary dismissals for jurisdiction do not act as decisions on the merits. That's correct. Okay. Does 41B address dismissals with prejudice? 41B says- I have it right here in front of me. Yeah. Our argument depends upon an implied understanding of 41B, and I think the answer to your question is no. But it says that unless the dismissal states otherwise, and it's the exception, except for lack of jurisdiction, improper venue, or fail to join a party- Which is probably why Pittsburgh doesn't fit. Well, I think Pittsburgh does fit, Your Honor. I think Pittsburgh is the controlling decision from this court's jurisdiction. Your case doesn't have anything to do with failure to join a party. But it was a lack of jurisdictional dismissal. That's hardly any different than a lack of standing jurisdiction. In other words, you cannot appear before the court if you don't have standing or if you fail to join a required party for that reason. Given the posture of this case, it sounds like there can be a huge difference when somebody fits repeatedly about why they have standing. Your Honor, forgive me for taking exception in the little time I have left, and this is my one and only time to try and defend my client. But my client never fit. The district court was wrong. As what happened in the underlying case, and I apologize for- Your client said- let me see if I got it correct. Your client said he had an ownership interest. Yes. Is that not correct? That is correct. And then when he was pressed on it as to documentation, he said, well, it's out there. I'll have to get it. And then when he was pressed on getting it, he said, well, it was sort of implied that it would be given to me. And then when he was pressed on that, he came up with another story. Am I incorrect on that? Yes, you are incorrect, Your Honor, and I apologize. No, don't apologize. If I'm incorrect, it's my fault. Tell me why. The facts are that he made a mistake when he invented the product and obtained the patent. It was in his name. He made a mistake of transferring it to a corporation for exploitation purposes, and then because he didn't want to have the publicity associated with owning the corporation, he left the shares in trust with his girlfriend. They parted ways. He couldn't obtain the- recall the documentation with sufficient precision by the time he had to file his case. So when he filed his case, he couldn't really remember where the documentation was or how it stood. But one of the shareholders who held a 12.5% interest, his lawyer stepped forward and said, you've got 100% sign this document affirming that, and he did. When the case came for filing, that's what he understood. I stepped in the case very late, very late. I stepped in the case when the case was almost ready to be dismissed, and the court was very unhappy with everybody on my side. Well, she sure was. I mean, she used deplorable conduct, vexatiously multiplying proceedings. Yes, that's what she- The time was not credible. That's what- Contumacious conduct. That's what Her Honor said, and in my opening brief, I document where that's just wrong. He never violated a single order, and he didn't seek any delay. But going back to Judge- You document where you disagree. Pardon me? No. You document where you disagree. No, I document, for instance, where she says in my opening brief, where she says she's- where Her Honor said he's contumacious, I document every single order issued in the court, and I show that he did not violate a single one of those orders. And I also further argue in my opening brief that she never- that Her Honor never specified which order he violated. If you disagree about your interpretation of his compliance, then would you concede that there was contumely- I just can't- I can't do that, Your Honor, because I have looked at this record closely. I came in late. I came in at the last minute. I documented every single order in the case. There was not a single violation of a single order. The one that Her Honor felt that there was a violation of involved a failure to deliver documents of standing, but he didn't have those. Well, but the whole point was that he felt that he kept dragging out the proceedings because he knew he was never going to be able to establish standing. There was no dragging out of proceedings. He didn't ask for any delays. All the- the court imposed the delays. He couldn't meet the deadlines. He couldn't meet the deadlines. There was no delay. This case was only one year. He didn't really talk about delay. What she talked about is dragging out the process, that, in other words, he had to have understood very early on that he was never going to be able to put that documentation together to establish his standing. What happened before I got there, Your Honor, is that my predecessor did not ask for rights of discovery to go get the documents he knew was there. I come into the case shortly before its dismissal. I say, Give me discovery rights. I know where the documents are. And I get very limited discovery rights. And I get some documents. And he sees the documents and he says, Gee, I was wrong. I don't own 100%. I only own 70%. And that's where the judge or Her Honor was very upset. You said 100. Now you're saying 70. Who am I going to believe? Not you. That's what happened. And I submit my last two minutes. There is a doctrine in the law, falsus in unis, falso in omnius. Your Honor cited that to me in the first hearing pertaining to me. Because I told Your Honor that what happened in the hearing wasn't as you saw it happen. This isn't about you. Well, it was about me. It was about me. I apologize for it being about me. But the fee award is against Mr. Ranieri, right? Right. This is not, I assure you, is not an exceptional case. There was no contempt. I'm here to contest the judge's discretion. I fully understand her discretion. I am here to contest it. I'm here to say that in my opening brief I set forth chapter and verse where there was no contempt. There was no delay. He didn't delay anything. The only delay that occurred in this case was when Microsoft and AT&T repeatedly asked for a delay. My client wanted discovery to show and prove his case. The judge, Her Honor, would not let him open discovery to get it. He wanted subpoena power to get the facts and the evidence, and he knew where to get it. He couldn't get it. But she wouldn't let him. When she offered him very limited discovery against the incorporating attorney, he got it. He saw where this was leading, and it refreshed his recollection. It was that refreshed recollection which bothered Her Honor. And she said, how could he be changing his story on the basis of these documents? I submit, Your Honor, that in eight seconds here that my client is very apologetic for not getting his paperwork in order in the first place. But he was not contemptuous, and this is not an exceptional case. And furthermore, Her Honor had no right to impose an inherent power here because the Section 285 covers it. Mr. Crockett, you've noted your time has expired. Thank you, Your Honor. We'll give you two minutes for rebuttal. Thank you. Mr. Kinnaird? May it please the Court, Stephen Kinnaird on behalf of AT&T and Microsoft. Nobody raised Section 1927. No, Your Honor. We proceeded under 285. Why didn't you throw that in, too? I suppose we could have, Your Honor. Can I ask a question? I like the legal stuff. So the 285, there is a good argument that the Court's use of inherent powers where there is a statutory provision that is directly on point would be inappropriate. What the Supreme Court said in chambers is that the first resort should be to the statute of rule that provides for a sanction. But if it's not up to the task, then the Court may resort to inherent power, and that would be here. So let's figure out if it's up to the task. Can we talk about CRST? What do you make of the fact that CRST did not expressly overrule Buchanan and, in fact, cite it to Buchanan? Well, Buchanan is still good law for abolishing the catalyst theory. I think what the Supreme Court corrected was an over-reading of certain language in Buchanan that you needed to have a consent decree or merits judgment. And the Court said that doesn't make sense. It says prevailing party. That's a term to be interpreted consistently across statutes. And as long as the challenge rebuffed, it does not have to be relief on the merits. So you read this CRST to have clarified that Buchanan really is saying you just need some judicial action or imprimatur. Which we have here. So I think it's enough, the dismissal, for standing. But the fact that this dismissal is one with prejudice means that it is, in fact, relief on the merits. Because it alters the legal relationship of the parties. Ranieri can no longer sue defendants for infringement of the asserted powers. But we wouldn't need to go there if we conclude that CRST is an intervention in law. That's correct. That's correct, Your Honor. And the district court did not abuse its discretion in finding this was an exceptional case. The district court found that Ranieri engaged in a pattern of obfuscation and bad faith. The Supreme Court has clarified that exceptional doesn't mean outre. But I think this one is outre. That's right. The Supreme Court said it's exceptional if the case is litigated in an unreasonable manner. Even if it does not rise to the level of sanctionable conduct. But here it certainly did. Because of the pattern of obfuscation. Because he submitted to the court documents, these purported assignment documents, that the district court found contained a knowing misrepresentation. And that she found, observing him in front of her, that all of his testimony was untruthful. And that the wild goose chase on which he led the court and the defendants in pursuit of transfer documents that she found not to exist, vexatiously delayed the proceedings. Mr. Crackett's concern, though, is that you've got a fee award against a client when he, having come into the case late, realized that it wasn't the client that was falling down. It was the fact that the appropriate request for discovery hadn't been made by prior counsel. What's your response to that? That's absolutely not true. And I think the response would be twofold. First of all, none of these contentions about... I didn't ask the question of whether prior counsel had been sued for malpractice. But it's out there. Well, I think it's more than that, Your Honor. Mr. Ranieri is the one who executed these documents. He represented in them that he was the sole shareholder at all times from the inception of GTI. He knew that was false. And there's no getting around that. In fact, there's a 2003 declaration in which he said that, you know, I gave shares in Global to my colleagues, and the whole purpose of establishing GTI was to disassociate himself from the corporation. That was a knowing falsehood. The record supports that. But it's important to realize all of these issues were resolved in the final merits judgment and are not subject to revision here. I understand that this is a little bit beyond the record. But even if it were true that he owned a substantial portion of the shares of GTI, wouldn't he have a problem with the fact that the other inventors were not involved in the case? Well, the problem would happen... GTI was assigned the patent by all the inventors. The problem is that under Washington law, if the corporation is dissolved, the actions have to be taken by all the shareholders. And his testimony was he didn't even receive the so-called oral transfers from Delaney and Donzig until after 1997. So none of this... This pops into my head, but isn't there a statute of frauds problem as well? I don't know that there's a statute of frauds in terms of the transfer of stock. There were bylaws that required it to be written. But it's important to note that because the district had found in the original dismissal order on the merits that there were no transfers, there were no transfer documents, that the purported assignment documents had false representations, that he delayed the proceedings. These questions, including whether it should have been dismissed with precedence and whether there was contumacious conduct, are all barred from revision here in this court. And I think my colleague is incorrect in saying that contumacious conduct requires disobedience of a court order. That's contempt. That could be contumacy. But contumacy is the flouting of the authority of the court. And the Fifth Circuit has said that perjury is contumacious conduct. And this court has effectively upheld that by necessary implication in affirming the merits judgment. Just follow my reasoning for a second. I'm not talking about stock transfers per se. I'm talking about alleged contractual obligations which fall under the statute. That could be, Your Honor, in terms of the – well, there was a right in here. It was just a false right. So I would like to address finally the reasonableness of the award. The district court has broad latitude there, and the district court did not rubber stamp the thesis. What about the redacted documents? That makes me a little uncomfortable. I'm certain that as a trial court judge, I would have insisted on seeing the redactions, even if I didn't allow the other side to see them. I would make three points on that. First of all, the district court, as a finer fact, found that she could still conduct meaningful review, even with the redactions. And it's important to note that of the 174 redacted entries, 163 of them were simply for fractions of an hour, and almost invariably for correspondence or conferences with clients or co-counsel. And so the district court wouldn't actually find those unreasonable. And she reduced 20% for duplication. So the fact that she reduced it for 20%, she only gave a five-month fee period, didn't give the whole of the case. We only got about a third of our fees for AT&T. And the fact that she struck certain entries, she made a very careful deliberation in terms of what was reasonable. And so we think the case should be upheld in full. If there are no further questions, Your Honor, I'll sit down. Thank you. Thank you, counsel. Mr. Crockett, we'll give you two minutes for rebuttal. Thank you. I appreciate it. In response to Judge O'Malley's question, and that was don't all inventors have to be before the court, that's correct. But this involved a corporation. And it is not true that all the shareholders of the corporation, the corporate owner, has to be before the court. The shares were transferred. All the shares were transferred into the corporation. The question was. Dissolved? It was a dissolved corporation. But under Washington law, a dissolved corporation continues to have viability, and it continues to press claims. But isn't it true that that can only happen if, in fact, it acts through all the shareholders? No, that is untrue. Under Washington law, a dissolved corporation operates by the majority of shareholders, not all shareholders. That is incorrect. And that was an incorrect statement, and we argued that before. And so when Mr. Ranieri appeared with his supposed false documentation, it said he holds 100 percent. But when the Rubens documents were subpoenaed, eventually, when I got into the case from the corporate formation, it was 70 percent. He had enough to control the corporation. He had enough to assert the corporate shares. It was not like a patent case where all the inventors had to be there. He had 70 percent control. But the court found it offensive that he would say 70 percent on the one hand and 100 percent on another. Therefore, she discredited his entire testimony. Oh, there was a lot more than that. Well, not much, Your Honor. I would say that the record does not say there was much more than that. Churchill famously said three times is a lie. And I would say that was it. I would say the only thing that really bothered the court specifically was that 70-100 percent distinction. There was nothing really else. I've documented that in my brief. And I've heard counsel just basically admit that there was no order violated. The only thing that he claims now was contemnatious was the perjury when Mr. Ranieri tried to explain why he said 100 and why he said 70. His perjury didn't matter. He held control of the corporation. Thank you, Your Honor. Thank you, Mr. Crockett. We'll take the case under review.